No. 25-10337

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

MICHAEL CLOUD,

*Plaintiff-Appellee,*

*v.*

BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT
PLAN,

*Defendant-Appellant.*

———————————————

On Appeal from the United States District Court for the
Northern District of Texas, No. 3:20-CV-1277

OPENING BRIEF OF DEFENDANT-APPELLANT

Michael L. Junk
Edward J. Meehan
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue N.W.
Washington, D.C. 20006


Nolan C. Knight
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201

Pratik A. Shah
James E. Tysse
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street N.W.
Washington, D.C. 20006


Michael Weisbuch
AKIN GUMP STRAUSS HAUER
  & FELD LLP
100 Pine Street, Suite 3200
San Francisco, CA 94111

*Counsel for Defendant-Appellant The Bert Bell/Pete Rozelle NFL Player
Retirement Plan*

# CERTIFICATE OF INTERESTED PERSONS

No. 25-10337, Cloud v. NFL Player Retirement Plan

Undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Defendant-Appellant**
The Bert Bell/Pete Rozelle NFL Player
Retirement Plan

**Counsel for Defendant-Appellant**
Michael L. Junk
Edward J. Meehan
GROOM LAW GROUP, CHARTERED

Dill Mitchell McFarland
Nolan C. Knight
Toni L. Anderson
MUNSCH HARDT KOPF & HARR, P.C.

Pratik A. Shah
James E. Tysse
Michael Weisbuch
AKIN GUMP STRAUSS HAUER & FELD LLP

**Plaintiff-Appellee**
Michael Cloud

**Counsel for Plaintiff-Appellee**
Christian Dennie

i

Sarah Pack
DENNIE FIRM, PLLC

Paul J. Vitanza
BARLOW GARSEK & SIMON

*s/Pratik A. Shah*
Pratik A. Shah

*Counsel for Defendant-Appellant The Bert Bell/Pete Rozelle NFL Player Retirement Plan*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant the Bert Bell/Pete Rozelle NFL Player Retirement Plan respectfully requests oral argument. The district court's decision reflects an unprecedented expansion of the availability of attorney's fees to ERISA litigants who do not succeed on any legal claim and obtain no judicial relief. Oral argument will facilitate proper review of the district court's outlier approach.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................iii

JURISDICTIONAL STATEMENT .................................................... 1

STATEMENT OF ISSUES PRESENTED.................................... 2

INTRODUCTION.............................................................. 3

STATEMENT OF THE CASE .................................................. 7

    I.    STATUTORY AND FACTUAL BACKGROUND.................. 7

        A.    ERISA Litigation............................................. 7

        B.    The Plan .................................................... 8

        C.    Plaintiff's Claims For Benefits ..................... 13

    II.    PROCEDURAL HISTORY......................................... 14

        A.    The Plan Denies Reclassification ................. 14

        B.    The District Court Awards Reclassification And Fees........................................................ 16

        C.    This Court Reverses And Directs Entry of Judgment In The Plan's Favor ..................... 17

        D.    The District Court Awards Plaintiff The Same Fees.........................................................20

        E.    This Court Denies Plaintiff's Motion To Dismiss The Appeal ............................................... 21

SUMMARY OF ARGUMENT ................................................ 22

STANDARD OF REVIEW.................................................... 24

ARGUMENT ................................................................. 25

    I.    PLAINTIFF IS INELIGIBLE FOR ATTORNEY'S FEES AND COSTS BECAUSE HE DID NOT ACHIEVE ANY "SUCCESS ON THE MERITS" ........................................... 25

        A.    A Plaintiff Who Does Not Succeed On Any Claim And Obtains No Judicial Relief Cannot Show "Some Degree Of Success On The Merits"................... 25

B.    The District Court Improperly Expanded "Success On The Merits" To Include "Findings Of Fact" And "Suggestive Language" ................................................. 29

C.    Under The District Court's Erroneous Framework, Plaintiff Is Still Not Eligible ........................................ 34

II.    THIS COURT'S PRIOR OPINION AND MANDATE REFLECT PLAINTIFF'S INELIGIBILITY FOR FEES AND COSTS ........................................................................... 39

III.    EVEN IF PLAINTIFF WERE ELIGIBLE, THE DISTRICT COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY'S FEES AS IT DID ..................... 41

CONCLUSION ...................................................................................... 45

# TABLE OF AUTHORITIES

**C̲A̲S̲E̲S̲:**

*Ariana M. v. Humana Health Plan of Tex., Inc.,*
792 F. App'x. 287 (5th Cir. 2019)...................................................24, 27

*Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,*
694 F.3d 557 (5th Cir. 2012)................................................. 7, 8, 9, 10

*Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan,*
410 F.3d 1173 (9th Cir. 2005)............................................................9

*Brogan v. Holland,*
105 F.3d 158 (4th Cir. 1997)..............................................................9

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,*
83 F.4th 423 (5th Cir. 2023) ...........................................................17
95 F.4th 964 (5th Cir. 2024) ...................................................*passim*
95 F.4th 974 (5th Cir. 2024) ...........................................................20
145 S. Ct. 271 (2024).......................................................................20

*Collins v. Department of the Treasury,*
83 F.4th 970 (5th Cir. 2023) ...........................................................40

*Collinsworth v. AIG Life Ins. Co.,*
267 F. App'x 346 (5th Cir. 2008).......................................................44

*Conkright v. Frommert,*
559 U.S. 506 (2010).........................................................................38

*D'Onofrio v. Vacation Publ'ns, Inc.,*
888 F.3d 197 (5th Cir. 2018).............................................................18

*Gomez v. Ericsson, Inc.,*
828 F.3d 367 (5th Cir. 2016).............................................................18

*Gross v. Sun Life Assurance Co. of Canada,*
763 F.3d 73 (1st Cir. 2014) ..............................................................28

*Hardt v. Reliance Standard Life Ins. Co.,*
560 U.S. 242 (2010)..................................................................*passim*

*Iron Workers Local No. 272 v. Bowen*,
    624 F.2d 1255 (5th Cir. 1980) ...................................................... 41, 42

*Katherine P. v. Humana Health Plan, Inc.*,
    962 F.3d 841 (5th Cir. 2020) ........................................... 24, 27, 28, 30

*Koehler v. Aetna Health Inc.*,
    915 F. Supp. 2d 789 (N.D. Tex. 2013) ......................................... 28, 32

*Lafleur v. Louisiana Health Serv. & Indem. Co.*,
    563 F.3d 148 (5th Cir. 2009) ...................................................... 7, 8, 39

*LifeCare Mgmt. Servs. LLC v. Insurance Mgmt. Adm'rs Inc.*,
    703 F.3d 835 (5th Cir. 2013) .............................................................. 24

*McCorkle v. Metropolitan Life Ins. Co.*,
    757 F.3d 452 (5th Cir. 2014) ......................................................... 7, 35

*Metropolitan Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008) ..................................................................... 34, 38

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................ 27

*North Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*,
    898 F.3d 461 (5th Cir. 2018) .............................................................. 42
    737 F. App'x 233 (5th Cir. 2018) ....................................................... 26

*Robinson v. Aetna Life Ins. Co.*,
    443 F.3d 389 (5th Cir. 2006) .............................................................. 38

*Ruckelshaus v. Sierra Club*,
    463 U.S. 680 (1983) ................................................................... *passim*

*Tejero v. Portfolio Recovery Assocs., L.L.C.*,
    993 F.3d 393 (5th Cir. 2021) ....................................................... 27, 30

## STATUTES:

28 U.S.C.
    § 1291 ................................................................................................. 1
    § 1331 ................................................................................................. 1

29 U.S.C.

    § 186(c)(5)(B) ........................................................................ 8

    § 1132(a)(1)(B) ..................................................................... 7

    § 1132(a)(3) .......................................................................... 7

    § 1132(e) ............................................................................... 1

    § 1132(g)(1) ......................................................... 8, 24, 26, 29

    § 1133(2) ............................................................................... 7

## OTHER AUTHORITIES:

FED. R. CIV. P. 8(a)(3) ............................................................. 31

*Merits*, BLACK'S LAW DICTIONARY (12th ed. 2024) ................... 27

*Relief*, BLACK'S LAW DICTIONARY (12th ed. 2024) .................... 30

*Successful*, AMERICAN HERITAGE DICTIONARY 1740 (5th ed. 2011) ........................................................................................ 27

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and ERISA, 29 U.S.C. § 1132(e).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

The district court originally ruled in favor of Plaintiff and against Defendant-Appellant the Bert Bell/Pete Rozelle NFL Player Retirement Plan on the merits. Based on that ruling, the court awarded Plaintiff $1,232,058.75 in attorney's fees and $30,074.72 in costs—plus up to $600,000 in conditional appellate fees and costs. But this Court reversed and instructed the district court to enter judgment in favor of the Plan. Despite that outright reversal, the district court issued a new opinion awarding Plaintiff the same fees and costs as before.

The issues presented are:

I.   Did the district court err as a matter of law in concluding that Plaintiff achieved "some degree of success on the merits," as required to be eligible for ERISA attorney's fees and costs, despite this Court's reversal on the merits?

II.  Did this Court's prior opinion and mandate, including its instruction to enter judgment in favor of the Plan, foreclose the district court's fee award?

III. Even assuming Plaintiff were eligible, did the district court abuse its discretion in granting him attorney's fees?

## INTRODUCTION

Under the Employee Retirement Income Security Act (ERISA), a party must achieve at least "some degree of success on the merits" to be eligible for attorney's fees. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). Courts have disagreed about whether a remand to a plan administrator for a do-over or a litigation-driven settlement constitutes enough "success on the merits" to justify a fee award. But no court has ever awarded attorney's fees to an ERISA claimant who lost across the board—until now.

This case returns on appeal after this Court previously reversed the district court's judgment in Plaintiff's favor and ordered entry of judgment in favor of the Defendant Plan (full stop). Yet on remand, while entering judgment *in the Plan's favor*, the district court (based on a new opinion and new rationale) awarded attorney's fees of almost $2 million *in Plaintiff's favor*—the same amount it awarded pre-reversal. In doing so, the district court flouted Supreme Court and Fifth Circuit precedent (in addition to this Court's instructions). Its fee award cannot stand.

The Plan pays hundreds of millions of dollars in disability benefits to thousands of former players each year. Most former players who are

unable to earn a living due to "total and permanent" (T&P) disabilities (football-related or not) receive six figures. Among those designated T&P disabled, the highest payments—"Active Football" benefits—go to a small group whose football injury caused the player to become T&P disabled immediately or "shortly after" his disability first arose.

Plaintiff Michael Cloud's playing career ended in early 2006. In 2014, he successfully applied for T&P benefits. At that time, the Plan's Disability Initial Claims Committee awarded him "Inactive A" benefits of $135,000 annually (which he continues to receive today) but determined that he was ineligible for Active Football benefits. Plaintiff did not appeal to the Plan's Board of Trustees. Two years later, he applied for "reclassification" to Active Football benefits. After the Committee denied his application, the Board denied Plaintiff's appeal for three independent reasons: (i) the appeal was untimely; (ii) Plaintiff failed to demonstrate "changed circumstances"; and (iii) Plaintiff was not T&P disabled "shortly after" his disability first arose in 2004.

Plaintiff sued under ERISA. He sought a judgment ordering the Plan to pay him retroactive and future Active Football benefits, damages, interest, and any other appropriate relief (plus attorney's fees and costs).

4

Plaintiff ultimately attained none of that—except the fees and costs. The district court initially rejected the Board's reasons for denial and awarded Plaintiff Active Football benefits and nearly $2 million in attorney's fees and costs. But this Court reversed. After concluding that Plaintiff had not shown, and in fact could not show, "changed circumstances"—a prerequisite for reclassification to higher benefits—the Court found that any remand to the Plan would be a "useless formality." This Court thus instructed the district court to enter judgment in favor of the Plan.

Before the district court did so, however, it wrote a 34-page opinion awarding Plaintiff attorney's fees and costs in the same amount as before this Court's reversal. It held that Plaintiff still achieved some success on the merits because he attained "unique, non-judicial relief" in the form of "Findings of Fact" from the district court that aligned with Plaintiff's allegations as well as statements "critical" of the Plan in this Court's opinion. The district court then purported to enter judgment in favor of the Plan, but its judgment incorporated the fee award against the Plan.

The district court's new fee award is as flawed as the initial benefits award that this Court reversed. A Plaintiff cannot achieve success *on the*

*merits* via factual findings that do not result in a successful claim or judicial relief of any kind. That such findings were not refuted by this Court, which had no occasion to scrutinize them given the legally dispositive "changed circumstances" issue, is irrelevant. The same goes for this Court's passing criticism of the Plan based on those unreviewed (and error-ridden) findings. Indeed, this Court's unequivocal instruction that the district court "enter judgment in favor of the NFL Plan" precluded the district court's judgment awarding fees *against* the Plan.

Even assuming Plaintiff were not ineligible for fees as a matter of law, the district court's rationale for granting fees—in the same amount as before reversal, no less—is an abuse of discretion. The court inexplicably concluded that the "relative merits" favored Plaintiff despite his complete loss on the merits. It even awarded up to $600,000 in appellate fees for *losing* on appeal.

This Court should vacate the district court's award of attorney's fees and costs, reverse the district court's judgment to the extent it includes such fees and costs, and instruct the district court to enter an amended judgment in favor of the Plan—this time without the fees and costs.

6

## STATEMENT OF THE CASE

## I.     STATUTORY AND FACTUAL BACKGROUND

### A.     ERISA Litigation

An ERISA claimant dissatisfied with a benefits denial may bring two types of claims relevant here.

*First*, the claimant may sue to obtain "benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  Where (as here) a "plan give[s] the administrator discretionary authority to determine eligibility for benefits," courts review a decision to deny benefits only for "abuse of discretion."  *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir. 2012) (internal quotation marks omitted).  "[N]o court may substitute its own judgment for that of the plan administrator."  *McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 456-459 (5th Cir. 2014).  And the abuse-of-discretion standard applies to subsidiary issues like interpretations of plan provisions.  *See id.* at 459.

*Second*, the claimant may assert that the plan failed to provide him with a "full and fair review" of his claim.  29 U.S.C. §§ 1133(2), 1132(a)(3).  A plan's processes are evaluated only for "substantial compliance."  *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 154, 157

(5th Cir. 2009).  Even a failure to substantially comply does not entitle the claimant to benefits, but may sometimes warrant "remand[] *** to the plan administrator."  *Id.* at 160.

In an action to recover unpaid benefits, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  But "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)."  *Hardt*, 560 U.S. at 255 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).

### B.    The Plan

The Plan "is an employee, multi-employer welfare benefit plan governed by [ERISA]."  *Atkins*, 694 F.3d at 560.  It "is jointly administered by employee (NFL players) and employer (NFL club owners) representatives."  *Id.* (citing 29 U.S.C. § 186(c)(5)(B)). The Plan's Committee, which decides claims in the first instance, consists of one National Football League Players Association (NFLPA)-appointed representative, one NFL Management Council (NFLMC)-appointed representative, and the Plan's medical director or another jointly designated medical professional.  ROA.223.

The Committee's decisions are appealable to the Plan's Board—the "named fiduciary *** responsible for administering the Plan." *Atkins*, 694 F.3d at 560 (internal quotation marks omitted).  The Board consists of three NFLPA-appointed representatives (all former players) and three NFLMC-appointed representatives.  *Id.*  Because ERISA requires these appointees to administer the Plan on behalf of *all* Plan participants, they are "obligated to guard the assets of the [Plan] from improper claims, as well as to pay legitimate claims."  *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (alteration in original) (quoting *Brogan v. Holland*, 105 F.3d 158, 164 (4th Cir. 1997)).

The Board has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan[.]" ROA.221.  This "authority includes, but is not limited to, the power to *** construe the Plan" and "[a]dopt procedures, rules, and forms for the administration of the Plan[.]" ROA.221-222.  The Board also may "[d]elegate its power and duties" or "otherwise act to secure specialized advice or assistance, as it deems necessary or desirable in connection with the administration of the Plan[.]" ROA.222.  The Board may, "to the extent not prohibited by applicable law, *** rely conclusively upon *** the advice or opinion of

such persons, provided that such persons are prudently chosen and retained[.]" *Id.*

The Plan provides various categories of disability benefits, totaling hundreds of millions of dollars annually, to former players who applied before January 1, 2015. ROA.9821 147:13-20.[1] Some former players receive "Line-of-Duty" benefits for "substantial disablement[s]," *i.e.*, certain impairments "arising out of League football activities." ROA.213, 215. Others receive greater "total and permanent ('T&P') disability benefits[.]" *Atkins*, 694 F.3d at 560.

For an applicant to be deemed T&P disabled, his disability must substantially prevent him from working "in any occupation or employment for remuneration or profit," and be "permanent" (meaning it "has persisted or is expected to persist for at least twelve months"). ROA.203. Alternatively, a player who "has been determined by the Social Security Administration [SSA] to be eligible for disability benefits" is "deemed to be [T&P] disabled" automatically. *Id.*

---

[1] Claims filed on or after January 1, 2015 are paid out of the successor NFL Player Disability and Neurocognitive Benefit Plan (now known as the NFL Player Disability & Survivor Benefit Plan). ROA.179.

Each former player "determined to be [T&P] disabled *** will be awarded benefits in one of the four categories" in Section 5.3 of the Plan. ROA.205. Active Football is the highest-paying and most restrictive category. A former player is eligible for Active Football benefits under Section 5.3(a) only if his "disability[] results from League football activities, arises while the Player is an Active Player, and causes the Player to be [T&P] disabled 'shortly after' the disability[] first arises." *Id.* A player "who becomes [T&P] disabled more than twelve months after a disability[] first arises will be conclusively deemed not to" satisfy Section 5.3(a)'s "shortly after" requirement. *Id.*

By contrast, qualifying for Inactive A benefits "does not require that the disability arise out of League football activities," ROA.205, let alone "shortly after" a football injury. Instead, a player need only be T&P disabled and apply for benefits "within fifteen (15) years *** of [his] last Credited Season." *Id.* Eligibility for Active Football and Inactive A T&P benefits is "[s]ubject to the special rules of Section 5.4," which provide that psychological and psychiatric disorders are covered only in expressly enumerated circumstances. *Id.*; *see also* ROA.206.

11

A former player who has been awarded T&P benefits may later seek to have his benefits reclassified to a higher-paying category. But the standard for reclassification is stricter than for an initial benefits application: The former player must show by "clear and convincing" evidence "that, *because of changed circumstances*, the Player satisfies the conditions of eligibility for a benefit under a different category of T&P benefits." ROA.210 (emphasis added).

The Board's eventual decision is the culmination of a multi-step process. In the lead-up to each quarterly meeting, the Board's advisors— including lawyers, paralegals, and career disability staff at the NFLPA and NFLMC—first review "the facts of the case, the medical records, and the specifics relating to dates" and flag "potential issues" (sort of like law clerks). ROA.12572-12573 ¶¶ 78-79. Board advisors and Plan staff then meet to discuss cases. ROA.12574 ¶ 86. In "separate pre-meeting[s]," the NFLPA-appointed and NFLMC-appointed Board members discuss cases with each other and their advisors. *Id.* ¶ 87. The full Board then convenes and formally votes to approve or deny applications "based on the reasons discussed in the *** pre-meetings." ROA.12575 ¶ 89.

### C.    Plaintiff's Claims For Benefits

Plaintiff played in the NFL from 1999 to 2006.  ROA.448-449.  He suffered a concussion on October 31, 2004, while playing for the New York Giants.  ROA.564-565.  Plaintiff missed several days of activities; returned; suffered a rib injury and missed another ten days; then returned and remained with the Giants for the rest of the 2004 season.  ROA.448, 562.  After signing Plaintiff to a new contract, the Giants released him in September 2005.  ROA.448.  After a stint with the New England Patriots, Plaintiff re-joined the Giants in December 2005.  *Id.*  When his contract expired in March 2006, his playing career ended.  *Id.*

Plaintiff applied for Line-of-Duty benefits under the Plan in 2009, and the Committee denied his application.  ROA.12576-12577 ¶¶ 94, 101.  Plaintiff appealed that decision successfully; in 2010, the Board granted him $3,290 per month.  ROA.265, 12577-12579 ¶¶ 102-110.

In 2012, Plaintiff applied to the SSA for disability benefits.  ROA.478.  Plaintiff alleged that the "onset date of [his] disability [was] December 31, 2008."  ROA.472.  In June 2014, an administrative law judge found that Plaintiff suffered from "migraine headaches" and "affective disorder"; adopted the disability onset date of December 31,

2008; concluded that Plaintiff had been unable to engage in meaningful work since that date; and awarded Plaintiff SSA benefits.  ROA.474, 478.

Shortly thereafter, Plaintiff (represented by counsel) applied for T&P benefits.  ROA.269, 272.  His application incorporated the SSA award, ROA.270-283, including by highlighting the "onset date of December 31, 2008," ROA.272.

In July 2014, the Committee granted Plaintiff T&P Inactive A benefits but denied him Active Football benefits.  ROA.455-458.  Plaintiff was not entitled to Active Football benefits because Plaintiff "did not become [T&P] disabled within any possible 'shortly after' period." ROA.457.  Plaintiff did not appeal to the Board.

As a result of his Inactive A classification, and in addition to other collectively bargained health and retirement benefits, Plaintiff has received $135,000 annually from the Plan since 2014.  ROA.459.

## II.    PROCEDURAL HISTORY

### A.    The Plan Denies Reclassification

In February 2016, Plaintiff (represented by counsel) applied to have his benefits reclassified to the Active Football category.  ROA.461-462. The Committee denied Plaintiff's application on several grounds,

including that the application "did not include any additional evidence," let alone "clear and convincing evidence," "of changed circumstances since the award of T&P benefits in 2014[.]" ROA.654.

On appeal to the Board, Plaintiff's counsel "recognize[d] that his benefits [could] only be reclassified if there [we]re 'changed circumstances[.]'" ROA.669. But Plaintiff "submit[ted] that this requirement should be waived[.]" *Id.*

The Board determined that Plaintiff's "request for reclassification *** must be denied." ROA.692. The Board's decision letter explained that because Plaintiff's "request for reclassification [wa]s based on *** the same impairments listed in [his] 2014 application," Plaintiff had not shown changed circumstances. *Id.* Further, Plaintiff was not T&P disabled within "any conceivable 'shortly after' period[.]" *Id.* "In any event," Plaintiff's "appeal was untimely." ROA.693.[2]

---

[2] A former player has "180 days from the receipt of [the] adverse determination to file a written request for review of the initial decision to the *** Board." ROA.234. All documents "are deemed received by the *** Board only if and when actually received by the *** Board, and not when mailed." ROA.237. The Committee's letter had advised Plaintiff that he must appeal within 180 days. ROA.655.

**B.     The District Court Awards Reclassification And Fees**

Plaintiff sued under ERISA.  ROA.37, 7654, 12284.  The operative complaint alleged that the Plan (i) "wrongfully denied" him Active Football benefits (Count I) and (ii) "denied [Plaintiff] a full and fair review" (Count II).  ROA.12311-12313 ¶¶ 46, 50.

After discovery, cross-motions for summary judgment, and a bench trial, the district court ruled in Plaintiff's favor on both counts, set aside the Board's decision, and awarded Plaintiff Active Football benefits.  The district court held that the Board "failed to provide Plaintiff a full and fair review" and "abused its discretion in denying Plaintiff's application for reclassification."  ROA.12604, 12614; *see also* ROA.12632-12633.  The district court ordered the Plan to "provide Plaintiff *** Active Football [T&P] benefits, effective retroactively" based on the date of his initial 2014 application for T&P benefits.  ROA.12637.

The court then awarded Plaintiff $1,232,058.75 in attorney's fees—$227,557.50 more than Plaintiff requested—plus $600,000 in "conditional appellate attorney's fees" and $30,074.72 in costs.  ROA.12695-12697; *see* ROA.12683.  The court held that Plaintiff was

eligible for attorney's fees and costs because he "succeeded on the merits on all counts." ROA.12683.

### C. This Court Reverses And Directs Entry of Judgment In The Plan's Favor

The "Plan raise[d] numerous challenges on appeal." *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 95 F.4th 964, 971 (5th Cir. 2024).[3] The Plan argued that Plaintiff's administrative appeal was untimely; the Board conducted a full and fair review; the district court misapplied ERISA procedural rules by relying on clearly erroneous factual findings; Plaintiff forfeited and failed to establish "changed circumstances"; and Plaintiff was ineligible for Active Football benefits anyway. Opening Br. of Defendant-Appellant 27-65, *Michael Cloud v. The Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. 22-10710 (5th Cir. Nov. 10, 2022), ECF No. 44 ("Opening Br."); Reply Br. of Defendant-Appellant 4-32, *Cloud*, No. 22-10710 (5th Cir. Mar. 9, 2023), ECF No. 86 ("Reply Br.").

---

[3] The Court's amended opinion made minor, non-substantive changes. *See* 83 F.4th 423 (5th Cir. 2023) (original opinion). For simplicity, the Plan cites only the amended opinion.

The Plan also argued for reversal of the district court's fee award.

Specifically, the Plan argued:

> This Court should reverse the district court's award of attorneys' fees and costs, including contingent fees." *See D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 219 (5th Cir. 2018) ("Because we reverse [on the merits], we also vacate the district court's award of *** attorneys' fees.").

Opening Br. 69; *see also id.* at 27 ("This Court should reverse the district court's unprecedented decision (including its accompanying award of attorneys' fees).").

Of all those arguments, this Court "discuss[ed] only one because it is dispositive:  Cloud cannot show that 'changed circumstances' entitle him to reclassification to top-level Active Football benefits."  *Cloud*, 95 F.4th at 971.  He "forfeited any claim to changed circumstances at the administrative level." *Id.* at 972 (citing *Gomez v. Ericsson, Inc.*, 828 F.3d 367, 374 (5th Cir. 2016)).  Regardless, "the record confirms that Cloud has no evidence that he is entitled to reclassification 'because of changed circumstances.'" *Id.*  Although the Plan had applied different definitions of "changed circumstances" over the years, the "variations" were "not significant," and Plaintiff had not explained "how he could meet the

standard for 'changed circumstances' under *any* of those definitions anyway." *Id.* at 973.

To be sure, this Court's opinion contained dicta sympathetic to Plaintiff and the district court. For example, it stated that Plaintiff "may" not have received a full and fair review and "probably" was eligible for Active Football benefits (albeit not reclassification). 95 F.4th at 967. The Court called the district court's findings "thorough" and quoted findings that portrayed the Board's processes as "far from ideal." *Id.* at 966-968. Ultimately, the Court softened its reversal by "commend[ing] the trial court judge for her diligent work." *Id.* at 974.

But this Court never addressed the Plan's arguments on these points or tested the district court's findings against the actual record. Because the Court ruled on the "narrow" yet legally dispositive changed-circumstances ground, it expressly declined to "address the Plan's other proffered bases for reversal." *Cloud*, 95 F.4th at 973. There was simply no need to resolve the parties' fact-intensive arguments about the Plan's compliance with ERISA procedural rules. Because "no amount of additional review can change the fact that Cloud is ineligible for reclassification under the plain terms of the Plan," this Court reasoned,

"[r]emand for more proceedings before the Board would *** be a useless formality." *Id.* (alterations and ellipsis omitted)

This Court's opinion also did not separately discuss the district court's award of attorney's fees and costs. It reversed outright and remanded "with instructions to enter judgment in favor of the NFL Plan." *Cloud*, 95 F.4th at 974. The Court also ordered Plaintiff to pay the Plan's costs on appeal. ROA.12749.

The Court later denied Plaintiff's petition for rehearing en banc, 95 F.4th 974 (5th Cir. 2024) (Mem.), and the Supreme Court summarily denied his petition for a writ of certiorari, 145 S. Ct. 271 (2024) (Mem.).

### D.   The District Court Awards Plaintiff The Same Fees

On remand, the district court wrote a new opinion awarding Plaintiff over $1.2 million in attorney's fees, plus up to $600,000 in appellate fees (with an option for Plaintiff to submit evidence that his fees exceed that amount), and $30,074.72 in costs. ROA.12806-12807.

According to the district court, despite this Court's reversal and instruction to enter judgment in favor of the Plan, Plaintiff had achieved "some degree of success on the merits" based on the "facts known" to the court "in the context of the litigation as a whole." ROA.12790. In the

district court's view, Plaintiff had obtained "unique, non-judicial relief" including a "declaration" (albeit "not *** a declaratory judgment") "outlining the factual record" and "critical" language in this Court's opinion. ROA12790-12791 & n.8, 12792; *see also* ROA.12791 n.8 (the purported "relief relate[d] to factual, not legal, issues"). The district court then explained that it would exercise its discretion to grant attorney's fees in the same amount as before. ROA.12795, 12804.

The district court entered an amended final judgment "in favor of Defendant The Bert Bell/Pete Rozelle NFL Player Retirement Plan and against Plaintiff"—but awarding Plaintiff fees and costs. ROA.12808.

### E.   This Court Denies Plaintiff's Motion To Dismiss The Appeal

After the Plan filed its notice of appeal, Plaintiff moved to dismiss. *See* Mot. to Dismiss (Mar. 21, 2025), ECF No. 29. He argued that (i) the Plan "waived" any challenge to the district court's fee award during the prior appeal (before the award now at issue existed); and (ii) this Court's decision reversing the district court was "law of the case" that precluded the Plan's appeal of the subsequent fee award. *Id.* at 11, 15. This Court summarily denied the motion. *See* Unpublished Order (Apr. 30, 2025), ECF No. 56.

## SUMMARY OF ARGUMENT

**I.** The underlying record in this case is complicated, but the main issue presented on appeal is not: Plaintiff is ineligible for attorney's fees and costs after this Court's prior reversal on the merits. If the phrase "some success on the merits" means anything, it means some success on an actual legal claim. At most, it could reach a successful procedural claim (*e.g.*, seeking a remand to the plan administrator) or settlement (*e.g.*, entitling a plaintiff to the benefits claimed). But mere factual findings with zero legal effect do not constitute success on the merits, as Supreme Court and Fifth Circuit precedents make clear.

The district court's contrary reasoning misreads those precedents to allow for fees when a court provides "non-judicial relief" in the form of factual findings and disapproving language. But bare words on a page are not "relief," and certainly not success on the merits. Unsurprisingly, the district court could not identify a single case supporting its unprecedented expansion of ERISA fee eligibility, which would create destructive incentives for litigants and headaches for courts. Accordingly, Plaintiff's categorical failure to obtain any relief on his claims precludes an award of attorney's fees as a matter of law.

22

**II.** This Court's prior opinion and mandate independently foreclose the district court's fee award. This Court instructed the district court to "enter judgment in favor of the NFL Plan," full stop. That instruction is most naturally read to preclude a judgment that awards millions in fees and costs *against* the Plan—consistent with the settled rule that wholly losing parties cannot get ERISA attorney's fees.

**III.** Even assuming that Plaintiff were eligible for fees despite final judgment on the merits in favor of the Plan, the district court abused its discretion in deciding to grant a fee award. The district court's analysis at this step hinges in significant part on its nonsensical conclusion that the "relative merits" favor Plaintiff—despite Plaintiff's failure to obtain any amount of benefits (instead of the millions of dollars he appeared to have obtained before the original fee award). Indeed, the district court's award of $600,000 in appellate fees despite Plaintiff's losses before this Court (outright reversal) and the Supreme Court (in the form of a summary denial) only underscores the fee award's indefensible nature.

This Court should reverse the district court's unprecedented fee award and instruct the court to enter an amended judgment for the Plan without any fee award.

## STANDARD OF REVIEW

This Court reviews a district court's award of attorney's fees and costs under 29 U.S.C. § 1132(g)(1) "for abuse of discretion, reviewing factual findings for clear error and legal conclusions *de novo*." *LifeCare Mgmt. Servs. LLC v. Insurance Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 (5th Cir. 2013).  ERISA "does not provide unfettered discretion to courts to award fees" because it requires the "claimant [to] show 'some degree of success on the merits.'" *Katherine P. v. Humana Health Plan, Inc.*, 962 F.3d 841, 841 (5th Cir. 2020) (quoting *Hardt*, 560 U.S. at 255).  A court's failure to properly apply that "standard from *Hardt*" is an "error of law" that necessarily "constitute[s] an abuse of discretion."  *See Ariana M. v. Humana Health Plan of Tex., Inc.*, 792 F. App'x. 287, 290 (5th Cir. 2019) (citing *LifeCare Mgmt. Servs.*, 703 F.3d at 846).

# ARGUMENT

## I.    PLAINTIFF IS INELIGIBLE FOR ATTORNEY'S FEES AND COSTS BECAUSE HE DID NOT ACHIEVE ANY "SUCCESS ON THE MERITS"

### A.    A Plaintiff Who Does Not Succeed On Any Claim And Obtains No Judicial Relief Cannot Show "Some Degree Of Success On The Merits"

The Supreme Court's decisions in *Hardt* and *Ruckelshaus* set forth the principles that govern eligibility for ERISA attorney's fees and costs.

As *Ruckelshaus* explained, under the general "American Rule," even "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." 463 U.S. at 683-684 (emphasis omitted). But sometimes "Congress has chosen to depart from the American rule by statute." *Id.* Although such statutes "differ in many respects, they reflect one consistent, established rule: a successful party need not pay its unsuccessful adversary's attorney's fees." *Id.* at 685. That limitation is rooted in at least "750 years" of tradition, during which English courts never went "so far as to force a vindicated defendant to pay the plaintiff's legal expenses." *Id.* at 684-685 (internal citation omitted). Absent a "clear showing" that "Congress abandoned th[e] established principle that a successful party need not pay its

unsuccessful adversary's fees," a fee claimant must have achieved at least "some degree of success on the merits." *Id.* at 685, 692, 694.

In *Hardt*, the Supreme Court applied *Ruckelshaus* to conclude that a "claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." 560 U.S. at 255 (quoting *Ruckelshaus*, 463 U.S. at 694). "A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y].'" *Id.* (alteration in original) (quoting *Ruckelshaus*, 463 U.S. at 688 n.9). It follows that under the *Hardt-Ruckelshaus* standard, a party's "failure to obtain *any* of the relief they requested" means the party failed to achieve "some success on the merits." *Ruckelshaus*, 463 U.S. at 682 (emphasis added). Along the same lines, when a plaintiff loses on all "claims," the action is "totally unsuccessful" and cannot give rise to an award of fees and costs. *See id.* at 686 n.8.

Consistent with that understanding, this Court has repeatedly applied *Hardt* to preclude fees and costs when an ERISA plaintiff's "only claims under that statute were dismissed." *North Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 737 F. App'x 233, 234 (5th Cir. 2018). When a fee-claimant "has not received any relief on the merits," the

claimant has not "achieved *any* success on the merits." *Katherine P.*, 962

F.3d at 841. Even if a claimant achieved some other form of success, like

"[s]ecuring a change in the standard of judicial review of [a plan]'s factual

determinations," that is "not success on the merits of [a] benefits claim"

and cannot (without more) establish eligibility for attorney's fees and

costs. *Id.* (quoting *Ariana M.*, 792 F. App'x 287 at 290).

The universal understanding that "some degree of success on the

merits" requires success on some legal claim, leading to some legal relief,

reflects the phrase's plain meaning and common usage. To be

"successful" means to achieve a "favorable outcome." *Tejero v. Portfolio*

*Recovery Assocs., L.L.C.*, 993 F.3d 393, 396 (5th Cir. 2021) (quoting

*Successful*, AMERICAN HERITAGE DICTIONARY 1740 (5th ed. 2011)). The

"merits" are "[t]he elements or grounds of a claim or defense; the

substantive considerations to be taken into account in deciding a case, as

opposed to extraneous or technical points, esp[ecially] of procedure."

*Merits*, BLACK'S LAW DICTIONARY (12th ed. 2024). So "success on the

merits" is a favorable outcome for a claim or defense. Indeed, courts

routinely use "success on the merits" as shorthand for success on the

"merits of *** claims"—not success in some other sense. *Munaf v. Geren*,

553 U.S. 674, 690 (2008) (holding that "likelihood of success on the merits" requirement to obtain a preliminary injunction requires analyzing "claims" and excludes other forms of success). That is presumably why the district court's original fee award reasoned that Plaintiff "succeeded on the merits *on all counts*." ROA.12683 (emphasis added).

To be sure, there sometimes may be difficult questions about what constitutes "some success on the merits." *Hardt* left open "whether a remand" to a plan administrator based on a successful procedural claim, "without more, constitutes 'some success on the merits.'" 560 U.S. at 256. This Court has similarly left open whether a "remand to the plan administrator, or a settlement that provided some payment of benefits" is sufficient. *See Katherine P.*, 962 F.3d at 842 n.1 (citing *Gross v. Sun Life Assurance Co. of Canada*, 763 F.3d 73, 79 (1st Cir. 2014); *Koehler v. Aetna Health Inc.*, 915 F. Supp. 2d 789, 797 (N.D. Tex. 2013)). But before this case, to the Plan's knowledge, no court (within this Circuit or anywhere else) had ever granted ERISA attorney's fees and costs to a party that lost on all its claims *and* failed to obtain any judicial relief, additional process before a plan, or settlement.

**B.    The District Court Improperly Expanded "Success On The Merits" To Include "Findings Of Fact" And "Suggestive Language"**

The district court acknowledged that an ERISA fee claimant must "achieve[] some degree of success on the merits." ROA.12789. But at every step, the district court flouted Supreme Court and Circuit precedent explaining what that means.

To start, the district court's statement that a plaintiff can "be awarded Section 1132(g)(1) attorney's fees even if they do not have a judicial order in their favor" misunderstands *Hardt*. ROA.12790. The district court emphasized that under *Hardt* a claimant need not secure "a formal judgment in his favor." ROA.12793. That is true, as far as it goes. In *Hardt*, the claimant had "failed to win summary judgment on her benefits claim." 560 U.S. at 256. But the claimant was eligible for fees because she "*obtained a judicial order*" requiring a "remand" that resulted in an *administrative* award of precisely "the benefits she sought" in asserting her claims. *Id.* at 255-256 (emphases added). Nothing in *Hardt* says or implies that a claimant can achieve some success on the merits without any favorable order, relief, or the payment of benefits.

29

To get around the requirement that a fee claimant obtain some non-trivial "relief," *Ruckelshaus*, 463 U.S. at 682; *Katherine P.*, 962 F.3d at 841, the district court redefined and expanded that word beyond recognition. The court characterized its "Findings of Fact" and this Court's "suggestive language" as "unique, non-judicial relief" that was "not trivial" because it showed that the Plan's actions were "wrong." ROA.12790, 12792, 12793, 12794. But "relief" means "[t]he redress or remedy, esp[ecially] equitable in nature (such as an injunction or specific performance), that a party asks of a court." *Relief*, BLACK'S LAW DICTIONARY (12th ed. 2024). Factual findings and dicta do not redress or remedy anything—they are not "relief" at all. Regardless, the caselaw requires "relief *on the merits*," *Katherine P.*, 962 F.3d at 841, "not merely success *in vacuo*," *cf. Tejero*, 993 F.3d at 396 (discussing requirement of "successful action" in similar context). The district court's approach reads "on the merits" out of the governing standard.

The district court also relied on language in the complaint's "prayer for relief" purporting to seek a "declaration" that Plaintiff "met the requirements for Active benefits, that Defendant's decision was not consistent with its plan articles, and that Defendant inconsistently

applied its own terms." ROA.12790-12791. But the district court recognized that "Plaintiff did not request a declaratory judgment"; nor did he receive one. ROA.12791 n.8. Statements in opinions that do not support any successful claim or lead to any judicial relief are not "some of the relief Plaintiff sought," ROA.12792, just because Plaintiff shoehorned arguments going *beyond* "a demand for the relief sought" into that part of his complaint, FED. R. CIV. P. 8(a)(3).

The district court also appeared to rely on Plaintiff's success in early procedural disputes, *i.e.*, "protracted discovery battles that ultimately resulted in extensive updates to the administrative record." ROA.12776; *see also* ROA.12791 (emphasizing "Plaintiff's success in the discovery phase"). It is unclear how much weight the district court gave those events, but none of them would have occurred had the district court recognized (like this Court did) that Plaintiff's reclassification application was facially defective. Regardless, as the Supreme Court observed, those "purely procedural victor[ies]" during discovery cannot support a fee award under *Hardt*. 560 U.S. at 256.

Despite *Hardt*'s clear rule and the other authorities discussed above, the district court wrote that it was "aware of no binding case law

31

that would prohibit" its fee award. ROA.12795. At the same time, the district court did not cite a single case holding that a party who failed on their ERISA claims nevertheless achieved some success on the merits. All the court could muster is that "[i]t is not unprecedented for courts in this district to award attorney's fees and costs when the Fifth Circuit is critical of a beneficiary plan." ROA.12792 (citing *Koehler*, 915 F. Supp. 2d 789).

But it *is* unprecedented for courts to do so when the claimant does not succeed on any claim and obtains no judicial relief. In *Koehler*, the district court awarded fees to a claimant who, after winning a Fifth Circuit appeal establishing a fact issue on whether the plan administrator had acted in bad faith, secured a court-approved settlement resulting in the full payment of the benefits she sought. 915 F. Supp. 2d at 791-792, 797. Nothing like that happened here. Quite the opposite: This Court reversed and instructed outright entry of judgment in favor of the Plan. 95 F.4th at 974.

Finally, the district court incorrectly asserted that requiring at least some success on a claim, judicial relief, or favorable settlement would conflate the *Ruckleshaus-Hardt* standard with the more

demanding "prevailing party" standard. ROA.12795. Not so. The *Ruckelshaus-Hardt* standard "expand[s] the class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties—parties achieving *some success*, even if not major success." *Ruckelshaus*, 463 U.S. at 688. In other words, the standard extends to "parties who *prevail in part*"—"*not* to completely losing parties" like Plaintiff. *Id.* at 689, 691. The district court's approach would turn the "consistent, established rule" that total winners need not pay total losers on its head. *Id.* at 685.

Abandoning that rule in the ERISA context would be problematic for numerous reasons. The district court's approach invites ERISA claimants to bring meritless lawsuits, and to attempt to induce courts to issue advisory opinions or extraneous statements critical of plan administrators. If such "findings of fact" and "suggestive language" warrant attorney's fees, appellate courts will have to scrutinize district court findings and language that do not impact the outcome of the litigation, even if the merits are straightforward. Such review may entail sifting through enormous records, as the 22,555 page record on appeal in this case demonstrates. All of this would make offering ERISA benefit

plans, which employers "are not required to do," highly unattractive. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 120 (2008) (Roberts, C.J., concurring in part and concurring in the judgment).

## C. Under The District Court's Erroneous Framework, Plaintiff Is Still Not Eligible

Even under the district court's misunderstanding of what it takes to achieve some success on the merits, the "non-judicial relief" the court purported to identify is illusory. Although the district court's reasoning is vague, it relied primarily on three (non-dispositive) conclusions: Plaintiff "met the requirements for Active [Football] benefits, *** Defendant's decision was not consistent with its plan articles, and *** Defendant inconsistently applied its own terms." ROA.12791.

To be clear, Plaintiff did *not* qualify for Active Football benefits—not even close. After suffering a concussion on October 31, 2004, Plaintiff was still playing in NFL games until January 2006, and his counsel conceded that a player cannot be T&P disabled "and play in the NFL." ROA.14060:18-19. The SSA also found—based on Plaintiff's own representation—that Plaintiff was T&P disabled beginning on December 31, 2008. ROA.277. That is more than sufficient to uphold the Board's finding that Plaintiff was not T&P disabled "shortly after" his concussion

(by October 31, 2005), especially under the applicable abuse of discretion standard. *See McCorkle*, 757 F.3d at 456-459. As explained in the Plan's prior appeal briefing, the district court avoided that conclusion by reading the "shortly after" requirement out of the Plan based on a textually indefensible, judicially rejected, and administratively forfeited understanding of the Plan's "special rules." Opening Br. 55-60; Reply Br. 18-21.

More to the point, this case was an appeal from the Plan's denial of Plaintiff's application for *reclassification*, not an initial application for Active Football benefits. And this Court held that the denial of reclassification *was* consistent with the Plan's articles, because Plaintiff could not "show that 'changed circumstances' entitle him to reclassification" (as the Plan requires). *Cloud*, 95 F.4th at 971. This Court also held that any inconsistency in applying plan terms was neither "significant" nor relevant to Plaintiff's application. *Id.* at 973. So under this Court's opinion, Plaintiff did not achieve "success" in *any* sense on these issues.

Beyond the three main findings the district court discussed, the court appeared to consider Plaintiff's general "efforts *** to shine a light

on what really lies behind the curtain as to the inner workings of the NFL Plan." ROA12806. But the district court's (legally irrelevant) findings about plan procedures are (again) clearly erroneous.

For example, the district court stated that the Board "denied or approved blocks of fifty or more cases at one time" and spent "as few as six seconds" on Plaintiff's appeal. ROA.12779, 12783. But that description of the *formal* Board meeting ignores the district court's own findings that before the formal meeting, (i) the Board's advisors had reviewed each case and flagged potential issues; (ii) the Board's advisors had met with Plan staff to discuss the cases; and (iii) the NFLPA-appointed and NFLMC-appointed Board members had separately met with their advisors to discuss cases. ROA.12572-12574 ¶¶ 78-79, 86-87. If everything had to be done at the formal meeting, every Board meeting would take weeks (or longer). The district court's reasoning is analogous to assessing the time a panel of this Court spends resolving an appeal by looking only at the judges' formal conference after weeks or months of preparation involving law clerks, advocates, and each other.

Similarly, the district court found that the "Board did not review its own stated bases for rejecting Plaintiff's claim" because those bases were

not verbally discussed at the formal Board meeting. ROA.12783. According to the district court, there must be evidence that the Board "actually contemplated" each ground for denial at the meeting. ROA.12605. As the Plan explained in the first appeal, nothing in ERISA imposes that requirement, which would render plan administration impractical if not impossible. Opening Br. 33-35; Reply Br. 25-26. In any event, the district court acknowledged that "notes" from the formal Board meeting "indicated that Plaintiff's application for reclassification was denied because [of] '[n]o clear and convincing evidence of changed circumstances.'" ROA.12605-12606 (second alteration in original). Even under the district court's made-up rule, the Board *did* discuss at its formal meeting the one issue that this Court held was fully dispositive of Plaintiff's reclassification request.

These and other findings are more indicative of the district court's misapprehension than of anything about the Plan. The district court continues to assert that the Board "failed to consult with a health care professional, which was required since the Board's determination was based on a medical judgment." ROA.12783-12784. But the Board's determination was *not* based on a medical judgment. It was apparent

37

from the face of Plaintiff's administrative appeal that he could not show changed circumstances (and that the appeal was untimely and that he was not T&P disabled "shortly after" his October 2004 concussion). Indeed, this Court's reversal of the district court (and approval of the Board's denial of reclassification) proves that no medical judgment was needed.

The district court also faulted the Board for not reviewing (or instructing its advisors to review) the entire record in every case. *See* ROA.12779. But there is no finding—or basis to find—that the Board (in conjunction with its advisors) failed to review the *material* records here. Nothing requires review of *every page of every record*, without regard for whether the information is duplicative or irrelevant to "the specific ground[s]" for the Committee's initial denial. *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 393 (5th Cir. 2006). ERISA is "already complicated enough without adding 'special procedural *** rules' to the mix," to say nothing of burdensome requirements that serve no apparent purpose. *Conkright v. Frommert*, 559 U.S. 506, 513 (2010) (quoting *Glenn*, 554 U.S. at 116-117).

38

The district court also stated that one Plan employee (Chris Smith) was both an advisor to the Board and a member of the Committee that had denied Plaintiff's original reclassification application. ROA.12782. But uncontroverted testimony established that Smith did *not* advise the Board regarding *Plaintiff's* appeal. ROA.10157 at 191:14-192:1. The court also ignored that "the same [advisor] can participate in (rather than conduct)" two levels of review without violating ERISA procedures. *Lafleur*, 563 F.3d at 155, 157.

Oddly, the district court referred to those demonstrably inaccurate findings as "undisputed." ROA.12774, 12777, 12795, 12796. But the district court's statement that the Plan "did not ask the Fifth Circuit to overturn" the findings is simply incorrect. ROA.12777 n.2. The Plan raised all the above points refuting the district court's findings in its prior briefing before this Court. *See* Opening Br. 13, 33-37, 40-47; Reply Br. 25-32. Those same unreviewed findings cannot support a fee award.

## II.  THIS COURT'S PRIOR OPINION AND MANDATE REFLECT PLAINTIFF'S INELIGIBILITY FOR FEES AND COSTS

In the district court's view, this Court "left the question of attorney's fees and costs open, requiring only that future proceedings be 'in

accordance' with its opinion," the "circumstances and spirit" of which "support granting" fees.  ROA.12803.  That is wrong in every respect.

Contrary to the district court, this Court's mandate forecloses the district court's fee award.  "[L]ower court[s] on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard explicit directives of that court." *Collins v. Department of the Treasury*, 83 F.4th 970, 979 (5th Cir. 2023).  They also "must take into account the circumstances that the appellate court's opinion embraces." *Id.* (internal quotation marks and alteration omitted).  This Court concluded its opinion by expressly instructing the district court to "enter judgment in favor of the NFL Plan." *Cloud*, 95 F.4th at 971, 974.  The mandate's boilerplate language required "further proceedings in accordance with the opinion of this Court"—namely, that instruction.  ROA.12748.  The opinion and mandate are thus most naturally read to convey an expectation that this case would end with a straightforward judgment "in favor of" the Plan—not a judgment including an unprecedented award of fees and costs *against* the Plan.

At a minimum, the "circumstances and spirit" of the opinion and mandate do not *support* the district court's fee award.  The immaterial

statements from this Court on which the district court relied were based on the district court's *unreviewed* findings. If this Court had believed the findings were relevant to any legal issue remaining in the case, it would not have expressly declined to address them before ordering the district court to enter judgment for the Plan. *See* 95 F.4th at 971, 973.

## III. EVEN IF PLAINTIFF WERE ELIGIBLE, THE DISTRICT COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY'S FEES AS IT DID

Because Plaintiff is ineligible for attorney's fees as a matter of law, there is no need for this Court to address any other issues. But even assuming Plaintiff's eligibility, the district court also abused its discretion when deciding to award Plaintiff attorney's fees and costs after this Court's reversal on appeal.

When a claimant achieves some success on the merits and is thus eligible for ERISA attorney's fees, courts in the Fifth Circuit look to five "*Bowen* factors" to determine whether fees are warranted:

(1) the degree of *** culpability or bad faith;

(2) the ability *** to satisfy an award of attorneys' fees;

(3) whether an award *** would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or

41

to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*North Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 485 (5th Cir. 2018) (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)). Here, the district court's legal and factual errors infected its analysis of the first, third, fourth, and fifth *Bowen* factors.

On the first and third factors, the district court's assessments of the Board's "bad faith" and the need for "deterrence" are based on the same clearly erroneous findings refuted above. *See* ROA.12796, 12797; pp. 34-40, *supra.* The district court cited the Board's purported failure to "have Plaintiff examined by a medical expert," "review all the records," "take notes when discussing the case with its advisors," "research medical terms it was unfamiliar with," "avoid conflicts of interest with the Committee," and "discuss Plaintiff's case at the formal meeting." ROA.12796. These accusations are incompatible with this Court's prior reversal, misconceive the record, and/or misunderstand ERISA's procedural requirements. *See* pp. 36-39, *supra.*

42

On the fourth factor, Plaintiff did not benefit all participants in the Plan or clarify an important legal issue. The district court found otherwise only because there is "one class action elsewhere in the country citing the findings of" the district court. ROA.12798. But those challenged findings do not have preclusive effect in that still-pending case (or any other case), and therefore provide no concrete benefit to other beneficiaries.

On the fifth factor, the district court found that the "relative merits of the parties' positions *** weigh in favor of granting" attorney's fees. ROA.12798 (internal quotation marks omitted). How could that be when a full and final judgment on the merits was entered in the Plan's favor? According to the district court, the Fifth Circuit's reversal "did nothing to diminish the merits of Plaintiff's arguments that Defendant's processes were deficient." *Id.* But the reversal made clear that those arguments were irrelevant to the Board's correct denial decision. *See Cloud*, 95 F.4th at 973.

Relatedly, the district court held that Plaintiff's "results obtained" had not changed post-reversal because Plaintiff's lawsuit supposedly revealed the Plan's "review process and Plan interpretation *** in detail

for the first time." ROA.12805. In reality, the results obtained have changed dramatically. Under the district court's original decision, Plaintiff would receive "over $1 million in retroactive payments" and an increase from $135,000 per year to over $265,000 per year going forward. ROA.12691. Now, he will receive zero retroactive payments and zero increase in benefits. If going from millions for succeeding on the merits to nothing for losing on the merits does not bear on the relative merits, it is hard to imagine what would.

In support of its counterintuitive determination that the relative merits support its fee award, the district court cited *Collinsworth v. AIG Life Ins. Co.*, 267 F. App'x 346, 350 (5th Cir. 2008). But that unpublished opinion (which affirmed a *denial* of fees) does not indicate that the merits can favor a party that loses across the board. It indicates only that the merits might not always "*strongly*" favor a *winning* claimant when "some evidence supported" the loser's position. *Id.* at 349, 350. At most, *Collinsworth* suggests that if the merits had been a close call, this factor might favor the Plan less strongly (but would still favor the Plan).

Indeed, the district court's appellate fee award underscores its failure to reasonably assess the relative merits. Although this Court

44

*reversed* and *denied* Plaintiff's petition for rehearing en banc, and the Supreme Court *summarily denied* Plaintiff's petition for a writ of certiorari, the district court stuck by its previously awarded "conditional maximum" of $600,000 in appellate fees—and invited Plaintiff to submit evidence that his appellate fees "exceed[ed]" that amount. ROA.12804-12805. The district court should not have awarded Plaintiff *any* fees (let alone hundreds of thousands of dollars) for losing on appeal. After all, this Court awarded costs *to the Plan* because it *won* on appeal. ROA.12749.

Because the district court failed to properly analyze four of the five *Bowen* factors, it abused its discretion in granting any amount of fees.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's award of attorney's fees and costs to Plaintiff, and order entry of an amended judgment in the Plan's favor with no award of attorney's fees and costs.

Respectfully submitted,

Michael L. Junk

*s/Pratik A. Shah*

Edward J. Meehan

Pratik A. Shah

GROOM LAW GROUP, CHARTERED

James E. Tysse

1701 Pennsylvania Avenue N.W.

AKIN GUMP STRAUSS HAUER

Washington, D.C. 20006

& FELD LLP

2001 K Street N.W.

Washington, D.C. 20006

Nolan C. Knight

Michael Weisbuch

MUNSCH HARDT KOPF & HARR, P.C.

AKIN GUMP STRAUSS HAUER

500 N. Akard Street, Suite 3800

& FELD LLP

Dallas, TX 75201

580 California Street, Suite 1500

San Francisco, CA 94104

*Counsel for Defendant-Appellant The Bert Belle/Pete Rozelle NFL Player Retirement Plan*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

*s/Pratik A. Shah*
Pratik A. Shah

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7) because it contains 8,506 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Century Schoolbook font.

*s/Pratik A. Shah*
Pratik A. Shah

May 12, 2025